**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1443-18T2

AMY KAMMERMAN,

      Plaintiff-Respondent,

v.

PETER KAMMERMAN,

      Defendant-Appellant.

_____

        Submitted September 9, 2019 – Decided September 16, 2019

        Before Judges Sabatino and Geiger.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FM-15-0285-13.

        Stolfe Zeigler, attorneys for appellant (Sonya K. Zeigler and Heather N. Capp, on the briefs).

        Wilentz, Goldman & Spitzer, PA, attorneys for respondent (Joseph J. Russell, Jr. and Risa M. Chalfin, of counsel and on the brief).

PER CURIAM

In this post-judgment matrimonial case, defendant Peter Kammerman appeals from a Family Part order denying his motion to modify parenting time and granting the cross-motion of plaintiff Amy Kammerman, now known as Amy Sandjso, for counsel fees and costs. We affirm in part and vacate and remand in part.

I.

The parties have one child, a daughter, born in March 2007. They were married in January 2008 and divorced on July 23, 2013. The parties entered into a marital settlement agreement (MSA) that resolved the issues of custody and parenting time. The MSA, in turn, incorporates by reference a consent order for parenting time, including a modified court holiday schedule. Under the terms of the MSA, the parties share joint legal custody of their daughter. Plaintiff is the parent of primary residence and defendant is the parent of alternate residence. The dual final judgment of divorce (FJOD) incorporates the terms and conditions of the MSA.

Pertinent to this appeal, defendant has parenting time on alternate weekends from after school on Friday until 7:30 p.m. on Sunday during the school year, and until 8:00 p.m. during summer recess. He also has parenting time every Tuesday from after school until 7:30 p.m. during the school year and

2

from 9:00 a.m. until 8:00 p.m. during summer recess. During the weeks defendant does not have weekend parenting time, he has parenting time on Thursday from after school or camp until 7:30 p.m. during the school year, and from 9:00 a.m. until 8:00 p.m. during summer recess.

Defendant has holiday parenting time from noon on Christmas day through noon on New Year's Eve, every Memorial Day, and alternate Independence Days. Each party has two non-consecutive weeks of vacation parenting time. Each parent has the right of first refusal to have parenting time if the other parent will be gone for two or more nights. Defendant also has parenting time if plaintiff is working on a school holiday. The parent not exercising parenting time is entitled to two telephone calls a day with the child.

Defendant first moved to modify parenting time in April 2017; however, he voluntarily withdrew the motion before it was decided. Defendant then filed a second, similar motion in August 2017. Defendant sought to substantially modify the parties' parenting time schedule.

Defendant requested parenting time every Monday at 9:00 a.m. through Wednesday at 9:00 a.m. and alternate weekends from Friday at 9:00 a.m. through Monday at 9:00 a.m. In the alternative, as with the first motion, defendant sought to: add a Tuesday overnight; extend his alternate weekend

parenting time through drop off at school on Monday morning; and extend weekday parenting time by thirty minutes during the school year and one hour during the summer.

The second motion also sought holiday and vacation time modifications. As to vacations, defendant sought to modify the parties' agreement as follows: (1) increase a vacation week from seven to eight days; (2) increase the total vacation time per parent to four vacations per year with each vacation consisting of two consecutive weeks; (3) allow defendant to pick the child up at 8:00 p.m. prior to exercising vacation parenting time; and (4) eliminate the twice daily telephone requirement during vacations "where communication is limited." The vacation parenting time modification sought were identical to those in defendant's first motion.

As to holidays, defendant wanted to change to an alternating winter school break schedule; specifically, the parties would alternate having their daughter from school closing until December 25 at 1:00 p.m. with having her from December 25 at 1:00 p.m. until New Year's Day. Defendant also sought to expand parenting time on July 4th, and to begin parenting time on Memorial Day and Labor Day the Friday evening before the holiday and continue until the Tuesday morning after the holiday.

4

As with the first motion, defendant sought to pick the daughter up at 8:00 p.m. the night if there is a school holiday and plaintiff is working and when exercising his right of first refusal, but only if plaintiff would be away on business. For the first time, defendant also sought to decrease the amount of time that triggered the right of first refusal to twenty-four hours; parenting time on both holidays and non-school days when plaintiff was working, with pick up at 8:00 p.m. the night before; and the right to pick up the daughter anytime plaintiff was unable to do so. In addition, defendant sought parenting time during summer recess when he was available and the daughter would otherwise be enrolled in summer camp. Finally, defendant again sought to compel plaintiff to obtain health insurance for the daughter that defendant would pay for and added a request to compel the daughter to attend therapy.

The second motion was adjourned to allow the parties to attend mediation with a retired judge. After the mediation was unsuccessful, plaintiff cross-moved for an award of counsel fees. In the alternative, plaintiff sought a discovery schedule, an in camera interview of the child, and a plenary hearing if the court determined defendant established a prima facie case of changed circumstance.

The trial court circulated a tentative decision pursuant to Rule 5:5-4(e), which denied defendant's request to modify parenting time, approved defendant's health insurance request and compelled therapy, and denied ordering mediation as moot. Counsel for both parties advised the court that their clients accepted the tentative decision. Accordingly, the court entered a November 2017 order that incorporated the terms of its tentative decision. Defendant did not appeal that order.

Less than ten months later, defendant filed his third motion to modify parenting time, the denial of which is the basis for this appeal. Defendant sought: (1) responsibility for the daughter's after-school care from pick up at 1:45 p.m. until plaintiff arrived home from work; (2) twenty days of vacation parenting time with a twelve-day block of consecutive days; (3) Sunday overnight parenting time; and (4) to extend his weekday drop off time by thirty minutes during the school term and one hour during summer recess.

Defendant asserts he was fifty-two years old when the parenting time schedule was created six years ago in 2013. At that time he owned and operated multiple dental practices and a gym. He claims he was in good health and had no substantial medical issues. Defendant subsequently retired from practicing

dentistry and claims his health deteriorated and he was diagnosed with "aggressive kidney failure" in 2017.

In addition, defendant underwent quadruple bypass surgery in June 2018 and developed a pulmonary embolism, which he claims necessitated selling all his dental practices and freed him from any employment obligations.

Defendant claims that his daughter's school requirements, extra-curricular activities, and social interests have changed since the November 2017 order was entered. She now attends middle school and is dismissed at 1:45 p.m. each school day, two hours earlier than elementary school ended. He noted plaintiff still works and does not arrive home until 5:00 p.m. While the child was registered to attend the Y Kids aftercare program for two hours each day until picked up by plaintiff, defendant claims the child actually took a bus home with a neighbor's son and stayed at the neighbor's house until picked up by plaintiff. The child now takes a bus to a different aftercare program.

Defendant claims these events constitute a substantial change in circumstances warranting a modification of the parenting time schedule.

Plaintiff opposed the motion and cross-moved to deny defendant's motion and for an award of counsel fees. In the alternative, plaintiff again sought a discovery schedule, an in camera interview of the child, and a plenary hearing

A-1443-18T2

if the court determined defendant established a prima facie case of changed circumstances.

Plaintiff asserts defendant filed his third motion to annoy and harass her. She claims defendant incurs no counsel fees because he is in a relationship with an attorney in the firm that represents him. Plaintiff contends the child is thriving under the existing parenting time schedule. Plaintiff also contends defendant shirks his parenting time responsibilities, has the child picked up by others, and repeatedly cancels parenting time for personal reasons. She claims defendant regularly fails to exercise scheduled parenting time and has requested plaintiff pick up the child more than 300 times. As to defendant's health, plaintiff asserts defendant had medical issues throughout the marriage and was already retired and on long-term disability when the MSA was negotiated. She contends defendant cancels parenting time or places the child with a third party due to his medical issues.

Plaintiff sought counsel fees of $8420.50. She states she incurred counsel fees and costs of $10,901.50 opposing defendant's unsuccessful second motion.

The trial court found no changed circumstances warranting a change to the parenting time provisions in the parties' MSA and denied defendant's motion in its entirety. It also found defendant was litigating the matter in bad faith,

causing "unnecessary legal fees," and awarded plaintiff counsel fees. The court noted it denied awarding plaintiff counsel fees on the second motion, and described the third motion as "almost identical" to the second motion, and caused plaintiff to incur substantial legal fees. The court found the hourly rates sought were reasonable under the circumstances. Finding some unspecified services were duplicative, the court reduced the counsel fees from $8420.50 to $7500. This appeal followed.

Defendant argues the trial court erred when it: (1) found no change in circumstances warranting a modification of parenting time; (2) applied the standard of harm to the child to determine if the parenting time schedule should be modified; (3) found defendant consented to the parenting time schedule imposed by the November 17, 2017 order; (4) awarded plaintiff $7500 in counsel fees without analyzing each of the factors set forth in Rule 5:5-3(c); and (5) failed to make factual findings and state its conclusions of law in its decision to award counsel fees in violation of Rule 1:7-4.

II.

Our review of Family Part orders is generally limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We "accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v.

Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare, 154 N.J. at 413). Generally, "findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare, 154 N.J. at 411–12 (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). We will not disturb the factual findings and legal conclusions unless convinced they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ricci v. Ricci, 448 N.J. Super. 546, 564 (App. Div. 2017) (quoting Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015)). Challenges to legal conclusions, as well as a trial court's interpretation of the law, are subject to de novo review. Id. at 565.

We begin our analysis by noting the parties agreed to the parenting time schedule that defendant sought to modify. The consensual parenting time schedule was incorporated into the MSA and FJOD. "New Jersey has long espoused a policy favoring the use of consensual agreements to resolve marital controversies." J.B. v. W.B., 215 N.J. 305, 326 (2013) (quoting Konzelman v. Konzelman, 158 N.J. 185, 193 (1999)). "Voluntary agreements that address and reconcile conflicting interests of divorcing parties support our 'strong public policy favoring stability of arrangements' in matrimonial matters." Konzelman,

A-1443-18T2

158 N.J. at 193 (quoting Smith v. Smith, 72 N.J. 350, 360 (1977)). Thus, "fair and definitive arrangements arrived at by mutual consent should not be unnecessarily or lightly disturbed." Id. at 193-94 (quoting Smith, 72 N.J. at 358). "A party seeking modification of a judgment, incorporating a [settlement agreement] regarding custody or visitation, must meet the burden of showing changed circumstances and that the agreement is now not in the best interests of a child." Bisbing v. Bisbing, 230 N.J. 309, 322 (2017) (alteration in original) (quoting Abouzahr v. Matera-Abouzahr, 361 N.J. Super. 135, 152 (App. Div. 2003)).

The MSA and defendant's submissions provide differing accounts of his health and work schedule. The MSA states defendant's "income consists of $120,000.00 that he receives in private disability insurance each year, his income from his Kamy Dental practices, the income generated by Retro Fitness/AJH Enterprises and additional income generated by [his] interests in various other entities/properties." In contrast, defendant's brief asserts that at the time the MSA was entered into, defendant owned and operated multiple dental practices and a gym, and "was in good health with no substantial medical issues." Defendant purportedly sold his dental practices on July 31, 2018.

While defendant may have more free time to exercise parenting time since the sale of his dental practices, his disability predated the negotiation of the parenting time schedule and MSA. Although "illness, disability or infirmity arising after the original judgment" may constitute a change of circumstances warranting modification of a parenting time schedule, Lepis v. Lepis, 83 N.J. 139, 151 (1980), the record demonstrates defendant was already disabled when the parenting time schedule was established.

Defendant also contends the changes in his daughter's school schedule and her advancing age constitute changed circumstances. The child was six years old when the FJOD was entered and eleven when defendant filed his third motion. Her school day now ends two hours earlier.

The court found defendant failed to present a prima facie case of substantially changed circumstances warranting a modification of the parenting time schedule. To the contrary, it found defendant's motion was filed in bad faith, causing plaintiff to incur unnecessary legal expenses. The court based its decision in large part on the denial of defendant's second motion, less than one year earlier. Notably, defendant accepted the court's tentative decision denying his second motion. The court found defendant did not demonstrate any substantially changed circumstances in the intervening ten months. It also noted

12

the child was "thriving" under the present schedule, and concluded a two hour change in the child's school day was a minor change. The court also declined to order another round of mediation.

We discern no abuse of discretion by the trial court in resolving the merits. Its findings and conclusions are supported by adequate, substantial, credible evidence in the record. In a Family Part motion scheduled for oral argument, a judge may tentatively decide the matter on the basis of motion papers and make the decision available to the parties. R. 5:5-4(e). Unless either party renews the request for oral argument after reviewing the tentative decision, the tentative decision becomes final, and the right to oral argument is waived. Id. Here, defendant reviewed the tentative decision and agreed to the terms. The final order denying his second motion was, in all material aspects, identical to the tentative decision and resolved all parenting time issues raised by defendant. The record supports the trial court's finding that defendant did not demonstrate any substantially changed circumstances that occurred after the denial of his second motion or that the parenting time schedule is no longer in the best interests of a child. Accordingly, the trial court properly concluded that a modification of the parenting time schedule was unwarranted. Of course, if a genuine future change in circumstances arises, nothing prevents either party

13

from moving to modify the parenting time schedule if the dispute cannot be amicably resolved.

## III.

We next address the award of counsel fees to plaintiff. A court may, in its discretion, order a party to pay the successful opposing party's attorney's fees in family actions, including claims for parenting time. N.J.S.A. 2A:34-23; R. 4:42-9(a)(1); R. 5:3-5(c). When doing so, the court should consider:

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.
>
> [R. 5:3-5(c); see also Mani v. Mani, 183 N.J. 70, 94-95 (2005).]

Fee awards should be disturbed "only on the rarest occasions, and then only because of a clear abuse of discretion." Rendine v. Pantzer, 141 N.J. 292, 317 (1995). A trial court's failure to consider the appropriate factors, make the required findings, and state its conclusions of law constitutes a clear abuse of discretion. Saffos v. Avaya Inc., 419 N.J. Super. 244, 270-71 (App. Div. 2011).

"Trial judges are under a duty to make findings of fact and state reasons in support of their conclusions." Giarusso v. Giarusso, 455 N.J. Super. 42, 53 (App. Div. 2018) (quoting Heinl v. Heinl, 287 N.J. Super. 337, 347 (App. Div. 1996)). "Naked conclusions" do not satisfy the requirements of Rule 1:7-4(a). Kas Oriental Rugs, Inc. v. Ellman, 407 N.J. Super. 538, 562 (App. Div. 2009) (quoting Curtis v. Finneran, 83 N.J. 563, 570 (1980)). A counsel fee award that is unsupported by adequate findings must be set aside. Clarke v. Clarke ex rel. Costine, 359 N.J. Super. 562, 572 (App. Div. 2005); Loro v. Colliano, 354 N.J. Super. 212, 227 (App. Div. 2002).

During oral argument, defense counsel asked the Family Part judge to set forth the basis for its counsel fee award. Counsel also inquired if the fee award was punitive. The court responded:

> It was both. Your client by virtue of his actions created unnecessary legal fees. I was persuaded by their argument that this was predictable, that last time I specifically declined their request for attorney's fees which I was considering . . . . Now he's back again with the almost identical motion and it caused them to incur a lot of fees. I didn't give them everything they asked for because there were, some things were duplicative. But I did think that the $7500 was justified, that . . . the hourly rate was reasonable under the circumstances.

Notably, the court stated it read counsel's certification and "considered all of the factors required under the rules in order to award fees," but did not "weigh all

15

A-1443-18T2

of the factors" and did not "know what the respective economic" positions were. Nevertheless, the court concluded defendant "is better able to pay these fees than [plaintiff] is." The court also explained: "I didn't give them everything, but I would say it was weighted by the fact that I thought that this was almost the identical motion from last year and it shouldn't have been brought at this time."

Defendant argues the trial court failed to comply with Rule 1:7-4(a), which requires the court to "find the facts and state its conclusions of law." We agree. The court did not: specify the services it found duplicative or the amounts charged for those services; make findings regarding "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;" nor address in its decision "the experience, reputation, and ability of the . . . lawyers performing the services." RPC 1.5(a) (1), (7). Instead, the court only stated the hourly rates charged were reasonable without making any findings regarding "the fee customarily charged in the locality for similar legal services." RPC 1.5(a)(3). The court also did not specifically address and weigh each of the Rule 5:3-5(c) factors, including plaintiff's ability to pay her own fees or the extent of the fees incurred by defendant. R. 5:3-5(c)(2), (4).

We vacate the counsel fee award and remand the issue for the development of a proper reviewable record. On remand, the judge shall make appropriate findings of fact and conclusions of law addressing the factors set forth in <u>Rule</u> 5:3-5(c) and RPC 1.5(a). We express no opinion as to the appropriate fee award in this matter.

Affirmed in part and vacated and remanded in part for further proceedings consistent with this opinion. We do not retain jurisdiction. Any party aggrieved by the trial court's final disposition on remand may file a timely appeal.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1443-18T2